UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VERONICA S.,<br><br>                    Plaintiff,<br><br>          v.<br><br>FRANK J. BISIGNANO,[1]<br>Commissioner of Social Security,<br><br>                    Defendant. | No. 2:23-cv-05717-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.    PROCEDURAL HISTORY**

In June 2019, Plaintiff Veronica S.[2] applied for Supplemental Security Income, alleging that she was entitled to disability benefits starting in April 2019. Her application was premised on the combined effect of several conditions, including a stroke, diabetes, high blood pressure, anxiety attacks, and peripheral vision issues. (ECF 17 (Administrative Record ("AR")) at 385-90,

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is hereby substituted for Kilolo Kijakazi as the defendant in this suit.

[2] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and last initial of the non-governmental party in this case.

435.) Plaintiff's application was denied at the initial level of review and on reconsideration, and she requested a hearing before an Administrative Law Judge. (AR 91-114, 196.) An initial unfavorable ALJ decision was vacated and remanded by the Appeals Council. (AR 118-28, 135-36). A second unfavorable decision was appealed to this Court; the Court later granted a stipulated remand to the Agency because portions of the audio recording of the hearing could not be transcribed. (ECF 13.)

After this second remand, the ALJ scheduled a telephonic hearing for May 14, 2024. (AR 338-47.) Shortly before the hearing, Plaintiff's counsel withdrew from representation, saying he had lost contact with his client. (*See* AR 4 (ALJ noting counsel's withdrawal); *see also* AR 359 (counsel's letter to Plaintiff advising of the withdrawal).) Plaintiff did not appear at the May 14, 2024, hearing (AR 4) and when the ALJ rescheduled the hearing to August 5, 2026, Plaintiff did not appear on that date either (AR 26). The ALJ thus held the hearing in her absence and took testimony from a vocational expert. (AR 24-30.) When Plaintiff did not respond to a request to show cause for her failures to appear, the ALJ found Plaintiff had constructively waived her right to appear at the hearing and proceeded with the case. (AR 4.)

After considering the updated record, the ALJ issued an unfavorable decision dated September 27, 2024. (AR 4-16.) The ALJ found at step two of the disability analysis that Plaintiff suffered from severe physical impairments, many of which were vision-related problems stemming from an earlier stroke. (AR 6-9.[3]) He found Plaintiff to have mental impairments that were medically determinable, but nonsevere, including vascular dementia, anxiety disorder, adjustment disorder with mixed anxiety and depression, mood disorder, major

---

[3] Plaintiff's physical conditions are analyzed in detail in the ALJ's decision, but because Plaintiff's arguments in this Court focus on her mental impairments, the Court does not discuss them further here.

2

depressive disorder, and posttraumatic stress disorder. (AR 6-9 (citing AR 590, 613, 880, 912, 936 (records noting diagnoses)).) In concluding that such impairments were not severe, the ALJ found persuasive the available medical opinions concerning Plaintiff's conditions—medical opinions that found Plaintiff's symptoms would cause no more than mild limitations in any functional domain. The ALJ concluded those opinions were: (1) supported by the detailed analyses in the reports showing a thorough review of the medical evidence; and (2) consistent with the medical record showing Plaintiff was not receiving any significant and ongoing mental health treatment. (AR 8-9 (citing AR 91-100, 102-13, 587-91, 597-606, 823-56, 877-81, 890-91, 893, 904).)

The ALJ found Plaintiff retains the residual functional capacity[4] to perform light work with certain limitations to account for her visual deficits. His RFC assessment made no accommodation with respect to Plaintiff's mental impairments. (AR 11-14.) At step four, the ALJ found Plaintiff has no past relevant work but concluded that a person with Plaintiff's RFC would be capable of performing work that exists in significant numbers in the national economy. (AR 14-16 (adopting vocational expert testimony at AR 27-29).) The ALJ therefore concluded that Plaintiff was not disabled since the June 12, 2019, the onset date alleged in her application. (AR 16.)

Dissatisfied with the agency's resolution of her claim, Plaintiff filed a Complaint in this Court. For the reasons set forth below, the Court determines that the ALJ's September 27, 2024, decision should be affirmed.[5]

---

[4] Residual functional capacity, or "RFC," is what a claimant can still do despite existing exertional and nonexertional limitations. *See* 20 C.F.R. § 416.945(a)(1).

[5] All further references to "the ALJ" or to his decision are to ALJ Nguyen's September 2024 decision, as that is the decision under review.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence. . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

## III.    DISCUSSION

Plaintiff makes two arguments in this Court concerning the ALJ's denial of her claim: (1) that the ALJ impermissibly rejected Plaintiff's testimony concerning the severity of her mental symptoms; and (2) that the ALJ failed to properly consider statements from Plaintiff's social workers that, according to Plaintiff, suggest that greater RFC limitations would be appropriate. (ECF 22 (Pl's Br.) at 2-10.) For the reasons below, the Court affirms the ALJ's decision.

### A.    The ALJ Provided Adequate Reasons for Discounting Plaintiff's Testimony

Plaintiff first argues that the ALJ gave inadequate reasons for discounting her testimony. (Pl.'s Br. at 2-7.) After careful consideration of that claim, the Court finds that it provides no basis for remand.

4

### 1. Legal Framework

Where a claimant testifies about subjective medical symptoms, an ALJ must evaluate such testimony in two steps. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could "reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted).

Second, if the claimant meets that first standard and there is no evidence of malingering, the ALJ can reject the claimant's testimony only by offering "specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted). An ALJ "is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted). At the same time, when an ALJ rejects a claimant's testimony, he must "specify which testimony [he] finds not credible, and then provide clear and convincing reasons, supported by evidence in the record," to support that determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015). General or implicit findings of credibility will not suffice; the ALJ must show his work. *Smartt*, 53 F.4th at 499; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

The sufficiency of the explanation should be judged in light of its purpose—ensuring that this Court's review is "meaningful." *Brown-Hunter*, 806 F.3d at 489. That is, the explanation must be "'sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony[.]'" *Id.* at 493 (citation omitted).

Judged by that standard, the ALJ's reasons and explanation for discounting Plaintiff's testimony were sufficient.

### 2.    Plaintiff's Testimony

As noted above, Plaintiff did not appear at the hearings held after the 2024 remand from this Court. She did, however, testify at the February 2022 hearing before the ALJ. She stated that she could not work because she had a stroke, which affected her vision and had changed her demeanor. (AR 37, 43.) She used to be "very strong" and unbothered by people who tried to offend her. (AR 37.) But since her stroke, she has issues being around other people. She gets startled if she hears something loud. (AR 37.) She is anxious. (AR 37.) It sometimes takes 10-15 seconds to grasp what people are telling her. (AR 37-39, 42; *see also* AR 67-74 (Plaintiff discussing the ways her stroke affected her during an October 2020 hearing); AR 474 (Plaintiff reporting in a Disability Report – Appeal form that her condition changed in March 2020, in that she gets overwhelmed and has anxiety).) She said she did not want to have altercations "with the world." (AR 42.) With her family, she gets frustrated and snaps. (AR 42.)

Plaintiff said she no longer drives alone because she lost her left side peripheral vision and gets scared. (AR 37-39.) She only drives places that are within five minutes of her house. (AR 39-40.)

Plaintiff said that sometimes her body "doesn't react with [her] hands," she loses grip control over her hands and drops things. (AR 38.) She has memory issues which have caused her to forget and leave her stove on, and she has burned her hand when she cooks because she forgets items are hot. (AR 39.) She was seeing a therapist. (AR 43.) She said her medications relax her. (AR 41, 44.) She could not remember one of the medications she was taking. (AR 42.)

When asked whether she could do a job where she was not working around people, she said she would try but she gets frustrated when she bumps into

things due to lack of peripheral vision. (AR 44-45.) She reported feeling "good" about her physical condition—it was just her anxiety that "takes something overwhelming that [she] can't control." (AR 45.)

### 3.      The ALJ's Decision

The ALJ summarized Plaintiff's testimony and found that although her impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were "less than fully persuasive to the extent they are inconsistent with [his RFC] assessment." (AR 11, 14.)

The ALJ's reasons were along two lines: First, the ALJ noted that Plaintiff was able to attend to her personal care needs, prepare meals, engage in hobbies, perform household duties, watch TV, drive a car, shop in stores, pay bills, spend time with family, and take care of others. (AR 11-12 (citing AR 589, 879 (Plaintiff's reports of her daily functioning to the consultative examiners))); *see also* AR 8 (discussing same)). Second, although Plaintiff was limited in the type of work she could perform, the objective medical record did not support (and was inconsistent with) Plaintiff's allegations of an inability to do all work. (AR 12, 14.)

The ALJ had discussed the objective medical evidence relevant to Plaintiff's mental impairments in an earlier section of his decision. That evidence reflected:

- largely normal mental status examinations reporting unimpaired intellectual functioning and memory, average fund of knowledge, no thought process or content disturbances, and no behavioral disturbances (citing AR 604-05, 831-32 (Social Worker Gomez Tello's January 2020 mental status examination));
- a psychiatric consultative examination report, which showed that, although Plaintiff had problems with delayed recall, she had intact

7

immediate recall (*i.e.,* she could recall 3/3 objects immediately and 2/3 objects in five minutes), and she had intact memory, concentration, calculation, and fund of information/intelligence (citing AR 589-90, 879-80 (consultative examiners' mental status examinations)); and

- neurological examinations reporting that Plaintiff was alert and oriented, had good attention span, and good short- and long-term memory (citing AR 757, 933, 936, 939 (neurological evaluations)).

(AR 7-9, 12-14.)

In assessing the severity of Plaintiff's medically determinable mental impairments, the ALJ found "persuasive" the available medical opinions finding Plaintiff would have at most mild limitations—finding them to be supported by their examinations and record findings, and consistent with the treatment record showing no significant or ongoing mental health treatment. With respect to the latter finding, the ALJ noted that Plaintiff had some treatment in 2020 and 2021 but apparently did not take medication for any prolonged period. (AR 8-9 (citing AR 587-81 (Dr. Aguilar's evaluation); AR 597-606, 823-56 (Kedren Community Mental Health Records); AR 893 (Dr. Eclarinal's November 2021 medication note reporting Plaintiff had been doing "ok")).)

### 4.    Analysis

The ALJ's reasoning is sufficiently specific for the Court to determine that he discounted Plaintiff's testimony and statements on permissible grounds. *Brown-Hunter*, 806 F.3d at 493.

First, the ALJ permissibly relied on Plaintiff's description of her daily activities to find that her mental health symptoms were not as limiting as her testimony might have suggested. (AR 11-12.) An ALJ is permitted to discount subjective symptom testimony where a claimant engages in "daily activities that are incompatible with the severity of symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citing *Ghanim v. Colvin,* 763 F.3d 1154, 1165

8

(9th Cir. 2014)); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by regulation on other grounds as stated in Sisk v. Saul*, 820 F. App'x 604, 606 (9th Cir. 2020) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Burch*, 400 F.3d at 680-81 (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage finances).

As the ALJ pointed out, Plaintiff described engaging in daily activities that undermined her claimed limitations—she attends to her personal care needs, prepares meals, does household chores, engages in hobbies, watches television, drives a car (albeit for short distances), shops in stores, pays bills, goes to church, and spends time with others. (AR 11-12 (citing AR 589, 879).) Plaintiff did not indicate that she needed any kind of flexibility or accommodation to be able to perform these activities. (AR 589, 879.) *Compare Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (ALJs must be mindful of the difference between activities at home and the requirements of work—a place "where it might be impossible to periodically rest or take medication"), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Plaintiff's briefing in this Court does not challenge this portion of the ALJ's explanation and thus forfeited review of it. *Carmickle*, 533 F.3d at 1161 n.2 (claimant's failure to challenge ALJ's reasoning with any specificity in his briefing waived the issue); *see also Ford v. Saul*, 950 F.3d 1141, 1158 n.12 (9th Cir. 2020) (claimant forfeits an issue that he fails to argue to the district court). And because that reason, alone, would support the ALJ's decision, any error with respect to the ALJ's other reasons would be harmless because such error would

not "negate the validity" of the ALJ's ultimate conclusion. *Carmickle*, 533 F.3d at 1162.

Here, moreover, the ALJ provided other valid reasons. The ALJ noted Plaintiff's testimony about her memory deficits (AR 11) but also cited portions of the medical records reflecting mostly normal mental status examinations, with unimpaired memory and intellectual functioning. (*See* AR 7-9, 12-14 (discussing AR 589-90, 598, 604-05, 756-57, 840-41, 879-80 (mental status examinations)); *compare* AR 889-91 (Social Worker Spahn's October 2021 assessment reporting he was unable to perform a mental status examination but Plaintiff had impaired memory, concentration, and thought process disturbance, explaining that she was distracted during the assessment by friends around her).) Based on that evidence, the ALJ found that that Plaintiff had only mild impairment in memory. (AR 7.) Contradiction between testimony and medical records "is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). And while it is incumbent on the ALJ to identify specific testimony he finds not credible and explain the evidence that undermines that testimony, any error in failing to meet that standard may be harmless where the "agency's path may reasonably be discerned." *Treichler*, 775 F.3d at 1099. Here it is unmistakable that the ALJ did not credit Plaintiff's testimony concerning memory deficits because the objective evidence in the record contradicted that testimony. His failure to say so, in as many words, does not require remand.

The ALJ also permissibly relied on a lack of supporting objective medical evidence in rejecting Plaintiff's testimony that she would be unable to work because of her anxiety. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)

10

("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same). The ALJ acknowledged abnormal clinical findings concerning mood and affect (AR 7), but concluded, ultimately, that Plaintiff's condition would not significantly affect her ability to function in the workplace. In reaching that conclusion, the ALJ relied on the psychiatric consultative examiners' finding that Plaintiff would have no more than mild mental limitations, the state agency psychologist's finding that Plaintiff did not have any severe mental impairment, and the treatment records showing Plaintiff had some treatment in 2020 and 2021, but she did not resume any psychiatric medications for a prolonged period. (AR 8 (citing AR 102-13, 587-91, 597-606, 823-56, 877-81, 893).) Here, again, while a more explicit explanation might have been helpful, no remand is required because the ALJ's path may reasonably be discerned.

In sum, the ALJ discounted Plaintiff's testimony on legally permissible grounds, his reasoning is supported by substantial evidence, and remand is thus unnecessary.

**B.      The ALJ Did Not Materially Err in His Consideration of Evidence from Plaintiff's Social Workers**

Plaintiff argues that the ALJ failed to properly consider statements from Genesis Gomez Tello, MSW, and Victor Goldamez, MSW, and Charles Spahn, LCSW. Plaintiff argues that the ALJ was required to provide "germane reasons" to reject these statements and that the failure to do so requires remand. (Pl.'s Br. at 8-9 (citing pre-2006 caselaw).) After review, the Court disagrees.

**1.      Legal Framework**

An ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," but he "need not discuss *all* evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95

(9th Cir. 1984) (emphasis original). Whether an ALJ must discuss a particular piece of evidence depends on the type of evidence and its source. Here, the relevant statements were made by two MSWs, individuals with a masters of social work degree, and one LCSW, a licensed clinical social worker. Plaintiff argues that such evidence should be treated as evidence from a nonmedical source. Defendant does not specifically argue to the contrary, and the Court will therefore assume, arguendo, that that is correct.[6]

There is no explicit articulation requirement for evidence from nonmedical sources under the current regulations. 20 C.F.R. § 416.920c(a), (d). Before the regulations were revised in 2017, however, ALJs could only disregard evidence provided by nonmedical sources by giving "reasons germane to each witness for doing so." *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 416.913(a), (d) (eff. Sept. 3, 2013 to March 26, 2017). Whether an ALJ must give reasons for rejecting such evidence following the new regulations is not settled. *See Hudnall v. Dudek*, 130 F.4th 668, 670-71 (9th Cir. 2025) (holding, under the 2017 regulations, that an ALJ need not give "germane

---

[6] Governing regulations treat statements by medical sources and nonmedical sources differently. *See* 20 C.F.R. § 404.1513. It appears that California treats licensed clinical social workers as healthcare workers. *See* Cal. Bus. & Prof. Code § 4996(c) ("A clinical social worker licensed under this chapter is. . . a health care practitioner. . . ."). There is thus an argument that the evidence provided by a licensed clinical social worker should be treated as "other medical evidence," and not as the equivalent of a statement made by a lay person or a "public and private social welfare agency personnel." *See Dubord v. Comm'r of Soc. Sec.*, No. 2:20-cv-634-KJM-KJN, 2021 WL 2661879, at *6 (E.D. Cal. June 29, 2021);  *see also Johnson v. Kijakazi*, No. 21-15919, 2022 WL 2593516, at *1 (9th Cir. July 8, 2022) (noting that the parties had agreed that a licensed clinical social worker is "a medical source who [could] give a medical opinion" under the new regulations). If the relevant statements were treated as coming from an "other medical source," the ALJ would not be required to address it at all because no medical opinion was expressed. But Defendant does not make that argument, and as such, the Court will assume that the evidence Plaintiff identifies should be treated as nonmedical evidence.

12

reasons" (or any reasons) for discounting testimony of nonmedical witnesses), *vacated by Hudnall v. Dudek*, 2025 WL 1379101, at \*2 (9th Cir. May 13, 2025) (withdrawing prior disposition and declining to decide whether an ALJ is still required to give germane reasons for discounting lay witness statements under the new regulations because the ALJ rejected Hudnall's similar testimony on appropriate grounds so any error was harmless)). Defendant did not argue that the Court should not apply the germane reasons standard here, and thus the Court assumes—again, arguendo—that it applies.

### 2.    Statements by MSWs Gomez Tello and Galdamez

Plaintiff first argues concerning statements by two MSWs. Ms. Gomez Tello's January 2020 report was an initial assessment for services. (AR 600.) She listed Plaintiff's current symptoms and impairments "from [the] perspective of client and others"—as follows:

> Client is a 45 year old Latino female that meets medical necessity due to symptoms of anxiety, increased sleep (days), no appetite, mood swings, rapid palpitations, ruminating thoughts, disoriented, new memory loss, angry outbursts (yelling and throwing things), crying spells, and loss of motivation. . . ; which impair[] client from socializing and functioning in daily activities, without treatment, symptoms may persist.

(AR 600.) Plaintiff reported she had been very stressed and overwhelmed, and her anxiety had not gone away. (AR 601.) Ms. Gomez Tello repeated, "Client meets medical necessity due to symptoms[] which impair[] client from socializing and functioning in daily activities, without treatment, symptoms may persist." (AR 601; *see also* AR 598, 605 (stating same).)[7] Ms. Gomez Tello

---

[7] Other citations by Plaintiff are duplicate records for the January 2020 evaluation. (*See* AR 826-27, 831-32 (duplicates).)

and Mr. Galdamez repeated the same medical necessity finding in subsequent progress notes in April and June of 2020. (AR 847, 851).

The ALJ discussed Ms. Gomez Tello's January 2020 assessment. He noted that the assessment reflected an "essentially normal" mental status examination other than mood and affect, including unimpaired mental functioning and memory, average fund of knowledge, no thought process or content disturbances, and no behavioral disturbances. (AR 7-9 (citing AR 604-05).) The ALJ also noted that Plaintiff had been cooperative with examiners and maintained good eye contact. (AR 7-8 (citing Ms. Gomez Tello's January 2020 assessment).) In other words, the ALJ accepted many of Ms. Gomez Tello's clinical findings and relied on them in his analysis.

Nevertheless, Plaintiff faults the ALJ for not addressing two other portions of Ms. Gomez Tello's report: her diagnosis of depression with anxiety, and her note that Plaintiff's mood was tearful with anxiety and lack of pleasure, and that her affect was sad and worried. (Pl.'s Br. at 7-8 (citing AR 605).) Here, again, the ALJ did not reject these reports: he acknowledged Plaintiff's anxiety and depression and found them to be medically determinable impairments. (AR 7.) He also noted that Ms. Gomez Tello's mental status examination was normal *except* as to mood and affect (AR 8). The ALJ need only give germane reasons for evidence he chooses to disregard, and he did not reject either of those findings.

Plaintiff also faults the ALJ for failing to address both MSW's statements that Plaintiff "[met] medical necessity" due to symptoms that "impair the client from socializing and functioning in daily activity" and that without treatment, "may persist." (Pl.'s Br. at 7-8 (citing AR 601).) The statement is so vague, however, as to be useless. The ALJ found Plaintiff to be mildly impaired in her ability to interact with others and did not doubt that she had symptoms—only that those symptoms would be work preclusive. (AR 7.) Any error in failing to

14

address the medical necessity statements is therefore harmless, because they would not have led the ALJ to a different decision. *Carmickle*, 533 F.3d at 1162 (ALJ error may be harmless where it is "inconsequential to the ultimate nondisability determination") (citation omitted).

### 3. Statement by LCSW Spahn

Plaintiff also faults the ALJ for not addressing evidence provided by LCSW Charles Spahn. Mr. Spahn conducted an intake assessment in October 2021. (AR 883.) He was unable to conduct a mental status examination because the assessment was by telephone, but he did state that Plaintiff was guarded on occasion, had unimpaired intellectual functioning, impaired memory, average fund of knowledge, thought process disturbance, impaired associations in that she was tangential at times, impaired concentration, judgment and insight, and a dysphoric, anxious mood. (AR 889-91.) Mr. Spahn explained that Plaintiff was distracted by friends around her during the evaluation. (AR 891.) His initial assessment noted that Plaintiff's "[i]mpairments in functioning include: Occupational (unemployed), relational (irritable toward others at times), and daily obligations (difficulty driving and being alone outdoors)." (AR 883-84.)

Plaintiff argues that the ALJ erred in failing to discuss the "impairments in functioning" portion of Mr. Spahn's assessment. But the ALJ did discuss Mr. Spahn's assessment more generally. He set out the abnormal findings Mr. Spahn made but noted that those findings were not reflected in other clinical examinations in the record—examinations that the ALJ found persuasive. (AR 9 (citing AR 890-91 (Mr. Spahn's findings) and AR 904 (Dr. Eclarinal's October 2021 mental status examination reporting findings within normal limits).) Inconsistency with other evidence is a germane reason for rejecting a nonmedical statement. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). As such, any failure to address the specific statement at issue is harmless; the ALJ's conclusion that Mr. Spahn's observations were out of line with other

persuasive medical opinions in the record provided ample reason for him to reject Mr. Spahn's report in whole.

In any event, what Plaintiff cites appears to be Plaintiff's *reports* to Mr. Spahn about the impact of her conditions on her life (AR 883-84), and her reports here—irritability, difficulty driving and being alone outdoors—are similar to her hearing testimony. Any failure of the ALJ to address this statement was therefore harmless. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ's reasons for rejecting claimant's testimony are valid, and where lay witness's statements are similar, "it follows that the ALJ also gave germane reasons for rejecting [lay witness's] testimony").

## IV.   ORDER

For all the foregoing reasons, the decision of the Commissioner is affirmed. Judgment shall be entered accordingly.

DATED: February 23, 2026

_____

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

16